and next we will hear USA v. Mendoza Good afternoon, your honors. Carter Powers begs on behalf of Mr. Mendoza, I would like to reserve three minutes for rebuttal and I will watch my own time. As we see it, there are two main issues before the court at the moment, the legal standard and whether or not Mr. Mendoza succeeds on the merits of his claim. I'd like to first address the legal standard and then move to the more substantive nature of the case. Tucker laid out a very clear standard. When there is an information error at sentencing of constitutional magnitude that in part provided the basis for a sentence, that's a due process violation and resentencing is required. This holding, this two-part test can really be boiled down to was the information wrong and did it matter? And that two-part test has been adopted across circuits and in this own circuit as well. Let me ask you a question, when you say did it matter, isn't this, isn't it that last requirement much stronger that it has to be demonstrably made the basis for the sentencing, right? Yes, your honor. So in other words, it's not enough that it was just considered, am I wrong there? You are not incorrect. And you're relying primarily on the Hill case. You've taken the position of course that the magnitude of the constitutional error doesn't have to be as originally in Tucker that it was a Gideon violation, but the cases that have come thereafter, including Hill, you relied on Hill. Am I right? And if I'm right, I'm reading directly from that case that that last component, which is the causation component, requires demonstrably made the basis, not that it could have been made. Right? Yes, your honor. And your honor correctly cites the standard of absolutely, I was trying to boil it down, but false or unreliable under Hill, second prong demonstrably made the basis for the sentence. Let me ask you about this, which wasn't quite clear. In the Blake case, the court held that it was unconstitutional, not only state, but federal, correct? So it was a state and federal violation. The statute itself was unconstitutional. It's unconstitutional under the state, but also unconstitutional federally, right? That is my understanding. Because that kind of makes a difference, doesn't it, in terms of the magnitude? It certainly does, your honor, the breadth of when we're talking about State v. Blake. And that case has not been challenged by the government. The issue in this case is not really whether or not State v. Blake was correctly decided or whether or not these convictions were, are properly vacated. The two issues really seem to be whether or not there is a third prong on this analysis under Tucker and under Townsend. The government is offering that it has to be a Gideon violation following from Tucker. We find really no support for that in any other circuits in the Ninth Circuit for the past 50 years. And to hold that, in our view, would be creating a circuit split where none had existed for about 50 years. We believe that this issue is primarily stemming from a reading of Custis. The United States Supreme Court case. But Custis, while it did talk about limiting things to Gideon claims, it was talking about limiting collateral attacks to Gideon claims. And we're not asking for a collateral attack at this time. That work has already been done for Mr. Mendoza by the Washington State Supreme Court. What we're asking simply is that these, this information is incorrect and it created, as you, as the court has said, it demonstrably made the basis for the sentence. Am I correct that the career offender status was met without the offenses that you're referencing? Is that right? That is correct, Your Honor. But when the sentencing comes about, basically the court says, this gentleman has a lengthy criminal history, there's a danger to society, and is recidivism. And then with respect to whether the sentence was enhanced, the court specifically said Mendoza's sentence was not enhanced as a result of the court's presumption of validity of those convictions. And that sentence did not rely on the simple possession of convictions. We would have to essentially discount the court's statement, wouldn't we, to rule in your favor? You certainly would have to overrule the district court's decision in this matter. But that decision was based on a reading of its prior record 10 years ago. And it was not putting itself in the first person, saying that this is what would have happened in that situation if I had been there. It was a reading of the record, and we are properly talking about what happened on the record. But the sentencing judge and that 2255 judge are the same person, right? That is correct, Your Honor. Kind of an unusual coincidence, I think. I don't see how we can discount the statement that, in his view, these invalidated convictions did not implicate the sentence. Your Honor, I believe it's absolutely correct that they did not enhance his sentence based on career offenders' issues. But we're talking about, and I'll just move to the substantive merits of Mr. Mendoza's point, the criminal history of Mr. Mendoza is a prime factor in this sentencing. It is required to be viewed and considered in creating the sentence. And the specific convictions that have been vacated were, on the record, mentioned during sentencing. 2007, Mendoza convicted of possession of methamphetamine. 2008, Mendoza convicted of possession of cocaine. It goes on. And while that was certainly talking about career offenders at the time, and we don't want to mislead the court by any means, what we're talking about here is a full picture of Mr. Mendoza's criminal history that was presented to the judge, that was considered by the judge, that was not just a one-off mention in a PSR of an incorrect statement. This was on the record, stated, and painted the full picture of Mr. Mendoza's history. That history was wrong, and it's a serious problem. Mr. Mendoza, while underneath his range, still had an agreed-upon range of 156 to 180 months. That is a range that he agreed upon, and the sentencing judge absolutely could have found a sentence between there. Maybe we walk in to resentencing, Mr. Mendoza is given 180 months. But at the very least, we would have done things correctly, and we would have followed procedure. So, let me ask you, though, in the Farrell case, and the Farrell case, I believe, was the first Ninth Circuit case that held that the same district, or the same judge who handled the sentencing, can handle the habeas, and that often is the case. And that's what the Farrell case held. And they didn't require, as had been suggested, I think, that a different judge make that decision, because it is a subjective decision, and it didn't require a hearing, so where I don't think you're suggesting the judge should have made the statement under oath, he clearly said, no, that wasn't the basis for my sentence, didn't he? Why can't we take that as true? I mean, essentially, he's testifying, although not under oath, that that wasn't the basis of his decision. Why isn't that, on the standard of view, something where we give great credence to the judge? We absolutely should give credence to what the district court judge said, but the district court's order from our reading is a reading of the record, not a reading from personal recollection at the time. It very specifically is only talking about what was on the record. What we can do here is read the record also. Absolutely. And we would encourage you to read it in our interpretation that this was making demonstrably a basis for the sentence. I'm vastly running out of time, so I'll reserve the rest of my minute for rebuttal. We'll add an extra minute for rebuttal for you. Good morning, Your Honor. May it please the Court. My name's Russ Moon, and I represent the United States here. I think I noted the questions that the Court asked, and I thought I would address those three questions first, and then talk a little bit about the standard or the two- or three-part test that has come up in the cases first. And this, as it was asked, wasn't the third requirement the most important requirement of all? And that is correct. And as the Court noted that on appeal, the defendant is relying on Hill. And the Hill case specifically said that we need not resolve whether the information was or unreliable, however, because even assuming Hill is correct, he has not shown that such information was demonstrably made the basis of the sentence. And it has to be made the basis, not considered. And that's the way you read it in terms of causation. It has to be made the basis. And the judge said it did not. Yes, Your Honor. And early on in Hill, right before that statement is made, it actually says for the second factor, the Court must have made it, must have, quote, made it abundantly clear that the challenged information, which is in parentheses, was the basis for the sentence. So it must be abundantly clear. And while I'm jumping to another question that came up, the comment was made as to whether or not this is the judge's actual recollection of the sentencing, or whether it's actually the review of the record. And I'm sorry I can look for that site, but one of the cases in my review on this indicated that there could be both. The Court could have an absolute recollection, so to speak, depending on, and I think, of course, it depends on when that sentencing was made. But if it's not there, the Court also has the authority or the discretion, so to speak, to look at the existing record and to see if that's abundantly clear. And I would suggest that, like an officer's notes on the stand, the Court can look at its comments during the record and refresh its recollection of what occurred. So, in other words, the subjectivity, as the Court held, I think, in the Ombank-Ferrell case, subjectivity of the sentencing judge is relevant. Absolutely, Your Honor. And here's why I think that the Ferrell process works in terms of giving the Court the opportunity to first either have that recollection or review the record and deny outright a 2255 in this situation without having a hearing. Because as the Court referenced, the Court wasn't under oath, but it made these statements. And presuming that there would be a hearing required, I don't mean to be flippant, Your Honor, but it would be, I can only imagine how that would go, as the government would call the presiding judge to the stand and said, what did you think at the time, and then the judge would rule on it, right? Let's just stop right there. I don't think that's going to happen. So, I think that the Ferrell process is an important process, and it works because in the Ferrell, the Court said there doesn't have to be a hearing. Absolutely. I mean, the Ombank opinion said there doesn't have to be the hearing, and the same judge can make the decision, and the state of mind of the same judge is relevant. Correct. And unlike a situation where we have a jury deliberation where we don't really know what happened there, we have sentencing records to go back and look on in this case. And as the Court also quoted what Senior Judge Nielsen indicated in terms of his order, I would note that the question is how much deference to give to that Court's statement. And I would say that the Jones case, in the Jones case, this case, and there's many Joneses, so this is 783 F. 2nd, 1477 for the 9th of 1986. This Court said, we shall affirm a sentence where the trial judge disavows reliance on the challenged sentencing information. In making that statement, the Court cited U.S. v. Gonzales, which was 765 F. 2nd, 1393, 9th Circuit case in 1985. And in Gonzales, this indicates, the Court said that when a court complies with this part of the rule, it prevents a defendant from establishing the second prong. In other words, when a court ultimately expressly disavows the fact that it did not rely on this information, a defendant can no longer prove that the court relied on that information. And notably, and I would indicate here, the defendant in Gonzales claimed that the Court could not take the District Court's statements at face value because the sentence would be non-sensible. I would submit, but this Court then said, well, we disagree, and said that we must take the statement at face value because if we don't, we have abandoned our reliance on the good faith of the district judges. This is a case to where, regardless of what the sentence was in Jones, I don't recall what it was, but in this case, there is no, there is really no meritous argument to say that the sentence was non-sensible when this was the exact sentence that the defendant could have anticipated and knew that it was coming, and the United States indicated, based on the 11C1C plea agreement, in the plea agreement, that it was going to recommend a sentence of 180 months. So in that case, I don't think that that, I think this is not only in line with the Jones and Gonzales statements made by this Court, but it is even more so because I don't think an argument can be made that this ultimate sentence was non-sensible in any way. You don't take the position, however, that these challenges to a sentencing has to be Gideon, right? No, Your Honor. Okay. And this, and let me just, this is where I wanted to go with this in the beginning after answering the questions. In this case, I think the court, the district court did, I would submit did, did us a great favor, and at least from the government's perspective, because the defendant on 2255 referenced that his prior convictions were invalid under the Washington State case, but ultimately only cited two cases, three cases, Tucker, Farrow, and Gideon. And in its citation to Farrow, in parentheses, it noted a three-part test. So on 2255, the district court looked at it and said... Farrow, Farrow was Gideon. Yes. They were both, to both cases... And Tucker was Gideon. Yes. So the district court looked at this case and said, okay, this is what the defendant, and I'm, of course, taking a little liberty here, but said the defendant is presenting Tucker and Farrow in, in support of its argument. It indicates in parentheses, there's a three-part test. He doesn't meet this three-part test because it's not a Gideon case. Arguably, the district court could have stopped right there. I think it probably would have raised more questions standing here today if it had. But instead, the district court moved on to the next two parts. And without citing Hill or Vanderwerfhold, I'm sure I mispronounced that name, but it basically took the latter two parts of this whole Gideon challenge and, and blended them into a due process challenge, which is, which is a different challenge. The district court looked at that and then evaluated. It didn't cite those cases, but it evaluated that standard and ultimately said that first, it didn't rely on false information or false or unreliable information because those guidelines were not based on that. It was based on existing trafficking, serious drug offenses. And secondly, then the court said that, yes, it was aware of those cases. Yes, it believed that those possession cases were valid at the time because they were, but ultimately indicated that it sentenced the defendant on the basis of serious drug offenses and serious drug trafficking, and that its reference to those cases was not specifically to enhance the sentence. And I think it's Hill, Your Honor, that also said that, that passing reference is not enough. It has to be abundantly clear. At bottom, one of the cases that addressed this was U.S. Portillo, and it indicated that the defendant got the exact relief that he sought. It, he filed a motion under this due process standard and the court found without a hearing that it did not affect the sentence and dismissed the motion. And I'm out of time. Thank you. Thank you, Your Honors. I would like to touch on two main points. First is talking about the basis for the sentence. And I want to perhaps make more clear my position in that matter, in that Tucker says information error of a constitutional magnitude in part provided basis for the sentence. And I think the issue here is about what basis means. When we're talking about a sentence, there is a host of factors that a sentencing judge has to look at, and those are all providing the basis for the sentence. In this specific situation, we're talking about the criminal history. We're talking about that tent pole of the sentence. And we're arguing that it was tainted and infected by these Blake convictions that were vacated being on the record. And that's an issue because Mr. Mendoza has not had the opportunity to argue without those on the record to a judge in a sentencing context. He hasn't been able to argue that he had months of his life taken away by these unconstitutional convictions. And that's an issue under due process considerations. And this is a procedural challenge. We're not talking about a substantive whether or not Mr. Mendoza's sentence was too high. We're talking about whether or not we did this correctly and it's our position that we did not. So as a result, we'd ask this court respectfully to remand this for resentencing and vacate the prior sentencing and allow Mr. Mendoza the opportunity to maintain his due process rights and make sure that there is not a second to this case. Thank you. This matter is now submitted.
judges: McKEOWN, DESAI, Silver